UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OLGA HERNANDEZ,                          )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )   Civil Case No.  08-1716 (RJL)
                                         )
                                         )
CARLOS M. GUTIERREZ, Secretary,          )
U.S. Department of Commerce,             )
                                         )
            Defendant.                   )
                                         )

MEMORANDUM OPINION
(September _19_, 2009) [#9, #10]

      Plaintiff Olga Hernandez ("Hernandez") alleges her former employer, the

Secretary of Commerce (the "Secretary" or the "agency"), discriminated against her based

on her sex, national origin, and in retaliation for asserting her discrimination claims.

Before the Court is the Secretary's Motion to Dismiss in part and Motion for Summary

Judgment in part addressing certain allegations by Hernandez of disparate treatment and

hostile work environment.[1]  For the following reasons, the Court GRANTS the

Secretary's motion.

---

[1]The agency does not argue that the Court should dismiss Hernandez's claims in total or that the
agency should be awarded summary judgment for all of Hernandez's claims.  (*See* Mem in
Support of Def.'s Mot. to Dismiss in Part for Summ. J. in Part ("Def.'s Mem.") [Dkt. #9] at 3.)
Therefore, this Court's ruling is confined to the agency's motion to dismiss Hernandez's
unexhausted retaliation claim on the basis of her non-selection for three patent examiner
positions and the agency's motion for summary judgment based on hostile work environment on
the basis of sex.  At this time, the Court expresses no opinion on any of Hernandez's claims that
may remain pending.

## BACKGROUND

Hernandez, a hispanic female from Puerto Rico, worked as an engineer for the Department of Commerce from May 2006 until she was fired in April 2007. (Pl.'s Opp'n to Def.'s Mot. to Dismiss in Part and Mot. for Summ. J. in Part ("Pl.'s Opp'n") [Dkt. # 13] ¶ 2.) In 2006, Hernandez contacted the agency's Office of Civil Rights to raise certain concerns of workplace harassment. (*Id.* ¶ 5.)[2]

Hernandez filed a formal administrative complaint, however, in February 2007 alleging the agency subjected her to a hostile work environment based on her sex and national origin and in retaliation for having reported discrimination against her. (*See generally* Pl.'s Ex. 1 [Dkt. #13–14].) Indeed, Hernandez alleged a variety of actions in support of her claim, including her co-workers' drinking alcohol at lunch, making comments about each other's appearances, talking with her about sex, and even alleging that one of her co-workers would touch his genitals while talking to her. (Pl.'s Opp'n ¶ 6 (quoting administrative complaint).) In April 2007, the agency terminated Hernandez's employment, (*id.* ¶ 8), and she amended her agency complaint thereafter to add a claim for her termination, (*id.* ¶ 9–10).

In October 2008, Hernandez filed her suit in this Court, alleging discrimination based on national origin, sexual harassment, and retaliation. She raised the same

---

[2]Due to her previous government employment as a patent examiner for the U.S. Patent and Trademark Office, Hernandez was hired in a nonprobationary status when she began working as an engineer for the agency. After she contacted the office, her status was changed from nonprobationary to probationary. (First Am. Compl. [Dkt. #8] ¶¶ 7–10.)

allegations as she had at the administrative level, and also raised additional allegations she failed to raise earlier. She alleged that when she was interviewed for the engineer position, "she was asked why she was not working at Indian Head since there were a lot of Puerto Rican people working there." (Compl. [Dkt. #1] ¶ 11.) She also claimed that her "co-workers made fun of her accent." (*Id.* ¶ 12.) Additionally, she claimed her supervisor gave her a low performance rating, lied to her about her failure to receive a cash award, failed to take her to a seminar, and failed to explain and reevaluate her performance review. (*Id.* ¶¶ 25–29.) One month later, Hernandez applied for three other positions. She was not selected for these patent examiner positions either, and she asserts the agency told her it was because of her "unique situation." (First Am. Compl. ¶¶ 52–53.) As a result, Hernandez filed an amended complaint in this Court, but did not pursue her administrative remedies as to this retaliation claim based on her non-selection. (Pl.'s Opp'n at 12.) The agency now moves to dismiss this claim.

## ANALYSIS

In reviewing the agency's Motion to Dismiss in part and for Partial Summary Judgment, the Court accepts Hernandez's factual allegations as true and draws all reasonable inferences in her favor. *See Broudy v. Mather*, 460 F.3d 106, 116 (D.C. Cir. 2006) (stating standard for motion to dismiss); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (stating standard for summary judgment).

The agency's motion, however, is entitled to be granted as to any claims Hernandez failed to exhaust. *Murphy v. Schafer*, 579 F. Supp. 2d 110, 114–15 (D.D.C. 2008). Additionally, the agency is entitled to summary judgment for Hernandez's hostile work environment claim when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). For the following reasons, the Court concludes: (1) that Hernandez failed to exhaust her administrative remedies regarding the three patent examiner positions for which she applied and (2) that Hernandez failed to meet the threshold level necessary to sustain a hostile work environment claim.

## I.   Administrative Exhaustion

Federal employees and applicants for employment are required to bring their claims to their employer, or prospective employer, before filing suit in court. 42 U.S.C. § 2000e-16(c) (permitting court action only after the agency has been given an opportunity to address the claim); *West v. Gibson*, 527 U.S. 212, 218–19 (1999). "The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation and alteration omitted). Exhaustion thus "give[s] federal agencies an opportunity to handle matters internally whenever possible and . . . ensure[s] that the federal courts are burdened only

4

when necessary." *Brown v. Marsh*, 777 F2d 8, 14 (D.C. Cir. 1985). Here the agency

moves to dismiss Hernandez's unexhausted claims and allegations—specifically, her

claim of retaliation based on her non-selection for three patent examiner positions that she

raised for the first time in her amended complaint and the additional allegations,[3] detailed

above, that she failed to raise at the appropriate time at the administrative level.

First, with regard to her retaliation claim, Hernandez does not dispute that she

failed to exhaust her administrative remedies in furtherance of these claims, but instead

argues that she is not required to exhaust her administrative remedies for claims that

occur *after* the filing of her administrative complaint. (*See* Pl.'s Opp'n at 12.) I disagree.

In 2002, the Supreme Court limited the continuing violations doctrine, on which

Hernandez implicitly relies. *National Railroad Passenger Corporation v. Morgan*, 536

U.S. 101 (2002). In *National Railroad Passenger Corporation v. Morgan*, the Court

specifically "rejected the so-called continuing violation doctrines that allowed plaintiffs to

recover for discrete acts of discrimination or retaliation that had not been separately

exhausted but were 'sufficiently related' to a properly exhausted claim." *Romero-*

---

[3] As for Hernandez's supplementary allegations that employees of the agency commented on her national origin and accent, her co-workers drank alcoholic beverages and made inappropriate comments, and her supervisor failed to take her to a seminar and denied her additional training, Hernandez argues she alleged some of these allegations generally in the administrative process, that others should be considered as background evidence. Others still she says should form the basis of a hostile work environment claim for which the continuing violations doctrine still applies. (Pl.'s Opp'n at 13–14.) Given this Court's ultimate conclusion, addressed below, that—even considering these allegations—Hernandez has failed to plead facts sufficient to establish a hostile work environment claim, this Court declines to address whether these allegations were exhausted and whether exhaustion was required.

*Ostolaza*, 370 F. Supp. 2d at 148 (quoting *Morgan*, 536 U.S. at 105). Indeed, in 2004, in granting a motion to dismiss, I addressed the *Morgan* decision noting that "'each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice' for which an administrative charge must be filed." *Murphy v. PriceWaterhouseCoopers, LLP*, 357 F. Supp. 2d 230, 239 (D.D.C. 2004) (quoting *Morgan*, 536 U.S. at 113); *see also Brady v. Livingood*, 360 F. Supp. 2d 94, 102 ("[T]he Supreme Court has subsequently held in the Title VII context that 'discrete discriminatory acts,' such as terminations and failure to promote, are not actionable if time-barred, even when they are related to acts alleged in timely filed charges.").

While *Morgan* itself only addressed recovery for "discrete acts occurring *before* the statutory time period," many courts have since interpreted it "to also bar discrete acts occurring *after* the time period, after the filing of an administrative complaint, when a plaintiff does not file a new complaint or amend the old complaint but instead presents these acts for the first time in federal court." *Romero-Ostolaza*, 370 F. Supp. 2d at 149 (emphasis added).[4]

---

[4] *See also Adams v. Mineta*, 2006 WL 367895 at *4 (D.D.C. Feb 16, 2006) ("However, following *Morgan*, which emphasized the need for 'strict adherence to the procedural requirements' of Title VII, some courts have begun to question whether the pre-*Morgan* judicially created exception to the exhaustion doctrine for retaliation claims remains good law. Those Courts that have squarely addressed this issue have concluded that it is not, and this Court agrees."); *Bowie v. Ashcroft*, 283 F. Supp. 2d 25, 34 (D.D.C. 2003) ("Given [*Morgan*'s] clear directive, prior cases allowing plaintiffs to file subsequent, similar claims for the first time in federal court simply do not survive *Morgan*.").

To date, Circuit Courts and judges within this District are split on how broadly to construe the *Morgan* holding.[5]  Nevertheless, I join with the majority of judges in this District who interpret *Morgan* to bar a plaintiff from proceeding with non-exhausted claims of discrete acts regardless of whether they occurred *after* the filing of an administrative complaint and regardless of whether they are sufficiently related to exhausted claims. *See Rand v. Geithner*, 609 F. Supp. 2d 97, 101 (D.D.C. 2009); *More v. Snow*, 480 F. Supp. 2d 257, 269–70 (D.D.C. 2007); *Romero-Ostolaza v*, 370 F. Supp. 2d at 149; *Adams v. Mineta*, 2006 WL 367895 at *3–5 (D.D.C. Feb 16, 2006); *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 138 (D.D.C. 2004).  This approach, at a minimum, seems more consistent with the spirit of the *Morgan* decision.

Thus, the issue here is whether Hernandez's post-complaint allegations concerning her non-selection constitute the type of discrete incidents of discrimination that require administrative exhaustion as "unlawful employment practice[s]."  *Murphy*, 357 F. Supp. 2d at 239; *see also Rand*, 609 F. Supp. 2d at 101 ("After *Morgan*, to determine whether a claim must meet the procedural hurdles of the exhaustion requirement itself, or whether it

---

[5]*See Weber v. Battista*, 494 F. 3d 179, 183 (D.C. Cir. 2007) (noting Circuits are split as to whether plaintiffs must exhaust additional claims of retaliation after the filing of an administrative complaint and declining to address the issue); *Lewis v. District of Columbia*, 535 F. Supp. 2d 1, 8 (D.D.C. 2008) (applying a narrow reading of *Morgan* and noting that under it, "the court must consider whether an investigation arising from the plaintiff's EEOC complaint would encompass the [non-exhausted claims]"); *Hazel v. Washington Area Metro. Area Transit Auth.*, 02-1375, 2006 WL 3623693 * 8 (D.D.C. Dec. 4, 2006) (finding "[i]t would be no surprise if the D.C. Circuit adopted" a narrow reading of *Morgan* and holding "no exhaustion separate and apart from [the plaintiff's] initial charge [was] required").

can piggy-back on another claim that has satisfied those requirements . . . , the Court must decide whether the otherwise barred claim is for a 'discrete act' of discrimination."). Of course they do. The Supreme Court itself in *Morgan* concluded that "termination, failure to promote, denial of transfer, [and] refusal to hire," constitute discrete incidents. 536 U.S. at 114; *Murphy*, 357 F. Supp. 2d at 239. Thus, Hernandez's non-selection for the patent examiner positions required her to exhaust her administrative remedies, and her failure to do so warrants dismissal of these claims.

## II.     Hostile Work Environment Claim

Finally, in determining whether a work environment is a hostile work environment, courts consider: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. Boca Raton*, 524 U.S. 775, 777–78 (1998) (internal quotations omitted). The Supreme Court has emphasized that the "standards for judging hostility are sufficiently demanding in order to ensure that Title VII does not become a general civility code." *Id.* at 787 (internal quotation omitted). Furthermore, "[a] hostile work environment under Title VII must be based on [at least] 'one unlawful employment practice' of pervasive, insulting, discriminatory conduct that makes the plaintiff's day-to-day work environment severely 'abusive.' Therefore, cobbling together a number of distinct, disparate acts will not [be enough to] create a hostile work environment." *Brantley v. Kempthorne*, No. 06-1137,

8

2008 WL 2073913, *8 (D.D.C. May 13, 2008) (quoting and citing *Morgan*, 536 U.S. at

118).  Unfortunately that is exactly what Hernandez is doing here.

Hernandez's allegations involve numerous, unrelated instances over the five-

month course of her employment that her co-workers exhibited behavior and language

that made her uncomfortable.  (*See* Pl.'s Opp'n ¶¶ 17–24.)[6]  While this conduct may well

be inappropriate workplace behavior, it can hardly be described as having constituted a

"practice of intimidation, insult and ridicule that pervades plaintiff's day-to-day working

life," as is required to establish a hostile work environment claim.  *Brantley*, 06-1137,

2008 WL 2072913 at *8 (internal quotation omitted).  Thus, "the acts that plaintiff

complains about are . . . not the type of extreme conduct necessary to support a hostile

work environment claim."  *Id.* (internal quotations omitted).  Indeed, Hernandez's work

environment, although not a model of professionalism, was not "a work environment that

---

[6]Specifically, Hernandez alleges that "she was asked why she was not working at Indian Head since there were a lot of Puerto Rican people working there," that her co-workers made fun of her accent and thought she said "butt," when she said "buttery," and that her co-workers "regularly used foul language in her presence to see how [she] would react." (Pl.'s Opp'n at 13–14.)  She further alleges that one co-worker "frequently touched his private parts in front of" her, "told her his marriage was not the same as it used to be," "talked to her about humans and animals having sex," "showed her sexually explicit pictures," and told her "that a paperclip could be used as a weapon and then . . . put a fist close to her face."  (*Id.* ¶¶ 17–18.)  Additionally, Hernandez alleges that another co-worker asked her "if she had guns and if she went to a hunting club to look for men."  (*Id.* ¶ 19.)  She alleges that during an office luncheon, her co-workers drank alcoholic beverages, and one co-worker told another "I would like to see you in that dress."  (*Id.* ¶ 20–21.)  Hernandez also vaguely alleges a that co-worker "has a photograph in her office of a tattooed behind," and that onr co-worker asked another "how her skirt looked on her an said 'my ass.'" (*Id.* ¶¶ 22–23.)  Hernandez also alleges that a co-worker sat on the lap of another co-worker at an office party.  (*Id.* ¶ 24.)  She alleges that she felt this behavior was offensive and that a co-worker "treated her differently because she did not participate" in it.  (*Id.* ¶¶ 25–26.)

was pervaded by discrimination." *Singh v. U.S. House of Representatives*, 300 F. Supp

2d 48, 56 (D.D.C. 2004); *see also Patterson v. Johnson*, 391 F. Supp. 2d 140, 146

(D.D.C. 2005).  "[N]ot everything that makes an employee unhappy is an actionable

adverse action" under Title VII.  *Jones v. Billington*, 12 F. Supp. 2d 1, 13 (D.D.C. 1997)

(internal quotation omitted).

Moreover, plaintiff's additional allegations regarding her supervisor's giving her a

low performance rating, giving her a false reason for her failure to receive a cash award,

failing to take her to a seminar, and failing to explain and reevaluate her performance are

not—if true—the type of discriminatory conduct prohibited by law.  (Compl. ¶¶ 25–29.)

Simply stated, incidents of this nature do not constitute discriminatory treatment based on

Hernandez's status.  *Smith v. Jackson*, 539 F. Supp. 2d 116, 139 (D.D.C. 2008) ("[I]t

must be clear that the hostile work environment was the result of discrimination based on

a protected status otherwise the federal courts will become a court of personnel appeals."

(internal quotation omitted)).

Thus, because the facts in this case do not meet the high threshold necessary to

establish a hostile work environment, the Court will also GRANT the agency's motion for

summary judgment as to this claim.  *See Carter v. Greenspan*, 304 F. Supp. 2d 13, 25

(D.D.C. 2004) (holding "caress[ing] [plaintiff] on his knee," "plac[ing] her breast on his

arm," and "plac[ing] her fingers on his buttocks" were not severe enough to establish a

hostile work environment claim (internal alterations omitted)).  An Order consistent with

the foregoing accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge