UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OLGA HERNANDEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No.   08-1716 (RJL) |
| ) | |
| ) | |
| CARLOS M. GUTIERREZ, Secretary, ) | |
| U.S. Department of Commerce, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION
(March 22, 2012) [Dkt. #33]

Olga Hernandez ("plaintiff") alleges that her former employer, the Secretary of the U.S. Department of Commerce ("defendant" or "agency"), retaliated against her for filing complaints with the agency's Office of Civil Rights alleging workplace harassment based on her sex and national origin (the "EEO complaints").  Before the Court is defendant's Motion for Summary Judgment [Dkt. #33] challenging plaintiff's allegations of retaliation.  Upon consideration of the relevant law, the pleadings, and the entire record herein, defendant's motion is GRANTED.

BACKGROUND

Plaintiff worked for the United States Patent and Trademark Office ("USPTO"), a component of the U.S. Department of Commerce, from October 1998 to November 2005. Am. Compl. [Dkt. #8] ¶ 7.  On May 15, 2006, plaintiff was hired as a nonprobationary

employee at the Bureau of Industry and Security ("BIS") within the U.S. Department of Commerce. *Id.* ¶¶ 6, 9. Plaintiff worked as a GS-12 general engineer in the Nuclear and Missile Technology Division ("NMTD"), *id.* ¶ 6, "classifying commodities and processing export license applications." Declaration of Steven B. Clagett ("Clagett Decl."), Ex. 1 to Defendant's Motion for Summary Judgment ("Def.'s Mot.") [Dkt. #33], ¶ 6. Her responsibilities included "reviewing export license applications that have national security, nonproliferation or foreign policy implications." *Id.*

In early October 2006, a BIS employee informed Steven Goldman, the director of NMTD, of errors in plaintiff's work product. *See* Def.'s Mot. at 6; Ex. 4 to Def.'s Mot. On October 31, 2006, plaintiff received a performance appraisal from her supervisor, Steven Clagett, who rated her performance at level 3 out of 5 for each of four performance categories. Clagett Decl. ¶ 2; Ex. 15 to Def.'s Mot. at 13-14.

Plaintiff filed a workplace harassment complaint with the agency's Office of Civil Rights on December 7, 2006 alleging discrimination based on her sex and national origin (the "December 2006 EEO complaint"). Declaration of Olga Hernandez ("Hernandez Decl."), Ex. 1 to Pl.'s Opp'n to Def.'s Mot. for Summ. J. (Pl.'s Opp'n) [Dkt. #34], ¶ 5. Plaintiff cited encountering inappropriate sexual conduct, coarse language, and stereotypes based on national origin. *See* Am. Compl. ¶¶ 11-14, 19-23.

On December 14, 2006, one week after she filed her EEO complaint, plaintiff met with Mr. Goldman to discuss her concerns. Hernandez Decl. ¶ 6. At the meeting, when

plaintiff asked to be transferred out of BIS, Mr. Goldman informed her that he only had the authority to transfer her to another division within BIS. *Id.* ¶ 21. Although Mr. Goldman asked plaintiff which division within BIS she preferred for her transfer, Ex. 17 to Def.'s Mot. at 3, she replied only that she wished to leave her present division. Ex. 18 to Def.'s Mot. at 1. On January 3, 2007, plaintiff was detailed to the Chemical and Biological Controls Division ("CBC") of BIS. Hernandez Decl. ¶ 10.

At CBC, plaintiff worked as a GS-12 general engineer. Declaration of Elizabeth J. Scott ("Scott Decl."), Ex. 2 to Def.'s Mot., ¶ 4. Plaintiff's work involved "processing export license applications for such items as pumps and valves, chemical exports and various biological equipment exports," and her responsibilities included "reviewing export license applications that have non proliferation or foreign policy implications." Scott Decl. ¶ 5.

On February 21, 2007, plaintiff filed a second EEO complaint alleging workplace harassment based on her sex and national origin. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss in Part & for Summ. J. in Part [Dkt. #13] ¶ 6. Additionally, she alleged that the Agency retaliated against her for her December 2006 EEO complaint by detailing her to CBC. *Id.*

In April 2007, plaintiff's employment status was changed from nonprobationary to probationary. Hernandez Decl. ¶ 11; Ex. 5 to Pl.'s Opp'n. Plaintiff alleges that this change was a form of retaliation. She claims she earned career tenure by working at the

USPTO from 1998 to 2001 and BIS reinstated her as a nonprobationary employee under 5 C.F.R. § 315.401. Hernandez Decl. ¶¶ 15-16. She alleges that the defendant changed her status to make it easier to terminate her in retaliation for her EEO complaints. *Id.* ¶ 19. However, the defendant claims plaintiff's status was changed to correct an administrative error. *See* Def.'s Mot. at 5; Ex. 6 to Pl.'s Opp'n. According to the defendant, BIS mistakenly hired plaintiff as a nonprobationary employee. Def.'s Mot. at 5. The defendant later discovered that plaintiff had a lapse in federal employment of more than thirty days, and re-classified her employment status to probationary in accordance with agency regulations under 5 C.F.R. § 315.802. Def.'s Mot. at 5, 16-17; Ex. 14 to Def.'s Mot.

On April 24, 2007, plaintiff received a progress review that deemed her performance "unacceptable" and recommended her for termination. Ex. 6 to Def.'s Mot. at 20. Her performance in licensing was deemed "inadequate" as many of her cases were "plagued with errors . . . reflective of Ms. Hernandez's pattern of performance." *Id.* at 19. Specifically, of the 120 license applications plaintiff processed while on CBC detail, thirty-two (26.7%) were completed incorrectly. *Id.* at 21. Of the seventeen "basic, uncomplicated" commodity classifications she completed, six (35%) were incorrect. *Id.* at 19. Additionally, the reviewer indicated that even though "[h]er errors were pointed out to her and additional oversight and assistance was offered," plaintiff's performance did not improve. *Id.* Plaintiff was terminated on April 25, 2007.

4

Hernandez Decl. ¶ 12.  On April 27, 2007, plaintiff amended her EEO complaints to include allegations that her termination was retaliatory.  Ex. 10 to Mem. in Supp. of Def.'s Mot. to Dismiss in Part & for Summ. J. in Part ("Def.'s Mot. to Dismiss") [Dkt. #9] at 7.

In May 2007, plaintiff applied for a position as a patent examiner with the USPTO.  Hernandez Decl. ¶ 49.  During the hiring process, one of the hiring officials contacted David Wiley, plaintiff's former supervisor at the USPTO.  Declaration of David A. Wiley ("Wiley Decl."), Ex. 9 to Def.'s Mot., ¶¶ 2, 4.  Although Mr. Wiley rated plaintiff's performance "commendable" on an October 2005 performance review, Ex. 14 to Pl.'s Opp'n, he did not recommend her for reinstatement at the USPTO.  Wiley Decl. ¶ 4.  At that time, neither Wiley nor the hiring officials were aware that plaintiff had filed EEO complaints.  Wiley Decl. ¶ 5; Declaration of Glenton B. Burgess ("Burgess Decl."), Ex. 10 to Def.'s Mot. ¶¶ 1, 3; Declaration of Katherine A. Matecki ("Matecki Decl."), Ex. 11 to Def.'s Mot., ¶ 3; Declaration of Tariq R. Hafiz ("Hafiz Decl."), Ex. 12 to Def.'s Mot., ¶¶ 1-2; Declaration of Peter M. Cuomo ("Cuomo Decl."), Ex. 13 to Def.'s Mot., ¶¶ 1-2.  Plaintiff was not hired for the position.  Hernandez Decl. ¶ 13.

Currently before the Court is defendant's Motion for Summary Judgment on plaintiff's retaliation claims.  For the reasons that follow, defendant's motion is GRANTED.

## STANDARD OF REVIEW

Summary judgment is proper where the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Though the Court must draw all inferences in favor of the non-moving party in deciding whether there is a disputed issue of material fact, "[t]he mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The party opposing the motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (quoting Fed. R. Civ. P. 56(e)). If a non-moving party intends to defeat summary judgment through factual representations made in its own sworn affidavits, it must "support [its] allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999), or it must provide "direct testimonial evidence" of the allegations. *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). "Indeed, for the court to accept anything less 'would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial.'" *Powell v. Lockhart*, 629 F. Supp. 2d 23, 34 (D.D.C. 2009) (quoting *Greene*, 164 F.3d at 675).

## ANALYSIS

Defendant moves for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Plaintiff brings this cause of action under Title VII of the Civil Rights Act, alleging that defendant retaliated against her for filing EEO complaints by: (1) placing her on a detail to the CBC; (2) changing her employment status from nonprobationary to probationary; (3) terminating her employment; and (4) failing to select her for a patent examiner position at the USPTO.[1]  Pl.'s Opp'n at 1. Defendant argues that plaintiff has: (1) failed to show that her detail to CBC and status change were adverse actions; (2) failed to exhaust her administrative remedies challenging her status change; (3) failed to refute defendant's legitimate, non-discriminatory reason for her termination; and (4) failed to establish a causal connection between her EEO complaints

---

[1] To the extent plaintiff alleges lack of training as a form of retaliation, the Court grants the motion for summary judgment. Plaintiff alleges that while at NMTD, she either did not receive training manuals or training manuals did not exist, and she did not receive training on certain "critical skills." Pl.'s Opp'n at 5-6. Plaintiff additionally alleges that while working at CBC, she did not receive formal training on several topics, including interpreting and analyzing intelligence information. Hernandez Decl. ¶ 36. She was, however, "afforded day-to-day assistance in accomplishing her assigned work," Scott Decl. ¶ 6, and was provided "the same training/instruction that other new employees received to perform similar work." Clagett Decl. ¶ 7. Plaintiff's allegations of the lack of opportunity for training do not constitute adverse action because they amount to no more than general dissatisfaction with her job. *Johnson v. Bolden*, 699 F. Supp. 2d 295, 300 (D.D.C. 2010) (concluding that "lack of opportunity to provide training" was not an adverse action); *see Freedman v. MCI Telecomms. Corp.*, 255 F.3d 840, 845-46 (D.C. Cir. 2001) (affirming summary judgment and finding no adverse action where all new employees received hands-on training from co-workers and plaintiff alleged that he received less training because the co-worker training him only had six months experience); *Dorns v. Geithner*, 692 F. Supp. 2d 119, 133 (D.D.C. 2010) (finding no adverse action where plaintiff's request to attend training courses was denied).

and the decision not to reinstate her to the USPTO. Def.'s Mot. at 14, 16, 20, 24, 30; Def.'s Reply in Supp. of its Mot. for Summ. J. ("Def.'s Reply") [Dkt. #37] at 1-2.

Title VII prohibits government agencies from retaliating against employees who engage in protected behavior. *See Holcomb v. Powell*, 433 F.3d 889, 901 (D.C. Cir. 2006). A plaintiff can establish an unlawful retaliation claim by establishing, through the presentation of evidence, that she (1) "engaged in statutorily protected activity; (2) that [s]he suffered a materially adverse action by h[er] employer; and (3) that a causal link connects the two." *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010) (quoting *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)). If the employer asserts a legitimate, non-discriminatory reason for the adverse action, the Court need only determine "whether the employee's evidence creates a material dispute on the ultimate issue of retaliation[,] either directly by [showing] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jones*, 557 F.3d at 678 (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)) (internal quotation marks omitted). The causal connection between the protected activity and the adverse action can be proven by direct evidence or inferred from the temporal proximity between the two events. *See Holcomb*, 433 F.3d at 895, 903; *see also Cochise v. Salazar*, 601 F. Supp. 2d 196, 200-01 (D.D.C. 2009).

Plaintiff identifies a litany of actions that she claims are adverse and resulted from the filing of her EEO complaints: her assignment to the CBC; a change in her employment status from nonprobationary to probationary; her termination from employment at BIS; and defendant's refusal to reinstate her at the USPTO. Pl.'s Opp'n at 1. Under Title VII, a "materially adverse" action is defined as one that would "dissuade [] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Our Circuit has made clear that the harm must be "objectively tangible" rather than "purely subjective." *Holcomb*, 433 F.3d at 902 (citations and internal quotation marks omitted). In short, there must be a "tangible change in the duties or working conditions constituting a material employment disadvantage." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (quoting *Walker v. WMATA*, 102 F. Supp. 2d 24, 29 (D.D.C. 2000)). For the reasons that follow, defendant's motion for summary judgment must be GRANTED.

### I.     The Detail to CBC

Plaintiff's detail to the CBC was not an adverse action. While a transfer can be "adverse" if the new position requires "significantly different responsibilities," *Holcomb*, 433 F.3d at 902 (citation omitted), here, plaintiff's detail required the same or similar responsibilities as her position at NMTD. While at NMTD, plaintiff was employed as a GS-12 general engineer reviewing and classifying export licenses. Clagett Decl. ¶ 6.

Similarly, at the CBC, plaintiff was employed as a GS-12 general engineer reviewing and processing export licenses. Scott Decl. ¶ 5. This transfer did not affect her pay, grade, or job responsibilities. Deposition of Olga Hernandez Transcript ("Hernandez Tr."), Ex. 3 to Def.'s Mot., 73:8-74:9. "Generally a lateral transfer or the denial of such a transfer, without 'some other adverse change in the terms, conditions or privileges of employment,' does not amount to an adverse action." *Dorns v. Geithner*, 692 F. Supp. 2d at 119, 132-33 (D.D.C. 2010) (quoting *Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C. Cir. 2002)). Furthermore, plaintiff requested that she be transferred out of NMTD, and when asked which division she preferred to be transferred to, plaintiff offered no suggestions.[2] Hernandez Tr. 104:4, 105:17-25; Ex. 17 to Def.'s Mot. at 3-4; Ex. 18 to Def.'s Mot. at 1. Plaintiff has failed to show that the detail to CBC was, in any way, an adverse action.

---

[2] Plaintiff did indicate that she preferred to be transferred out of the BIS completely, rather than detailed to another division. Ex. 8 to Def.'s Mot. to Dismiss at 6. Mr. Goldman, however, informed her that he only had authority to transfer her to another division within BIS. Hernandez Decl. ¶ 21. Plaintiff additionally alleges that by simply detailing her to a position that was not commensurate with her background and experience, defendant was retaliating against her. Pl.'s Opp'n at 12-13; Hernandez Decl. ¶¶ 23, 27. Plaintiff, however, did not object to the detail until she filed her second EEO complaint in February 2007, nearly two months after her detail to the CBC commenced. Hernandez Tr. 108:13-20; Hernandez Decl. ¶ 10; Pl.'s Opp'n to Def.'s Mot. to Dismiss ¶ 6. The Court again finds that plaintiff's allegations amount to no more than general dissatisfaction with her job. *Forkkio v. Powell*, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002) ("Purely subjective injuries, such as dissatisfaction with a reassignment or public humiliation or loss of reputation, are not adverse actions." (citations omitted)).

## II. The Change in Plaintiff's Employment Status

Plaintiff failed to exhaust her change of employment status claim. As this Court previously stated in its Memorandum Opinion granting defendant's Motion to Dismiss, federal employees and applicants for employment are required to bring their claims to their employer, or prospective employer, before filing suit in court. Mem. Op. at 4; 42 U.S.C. § 2000e-16(c) (permitting court action only after the agency has been given an opportunity to address the claim); *West v. Gibson*, 527 U.S. 212, 218–19 (1999). In addition, plaintiff must exhaust each "[d]iscrete act[]" of unlawful action, which encompasses "termination, failure to promote, denial of transfer, or refusal to hire," and other acts that "are easy to identify." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *Murphy v. PriceWaterhouseCoopers, LLP*, 357 F. Supp. 2d 230, 239-40 (D.D.C. 2004). In her EEO complaints, plaintiff specifically included allegations of retaliation for the detail to CBC, and later amended the complaints to include allegations of retaliation for her termination. Ex. 10 to Def.'s Mot. to Dismiss at 3, 11, 14. She did not, however, include allegations challenging the change in her employment status. Unfortunately for plaintiff, a change in employment status is a discrete act requiring

exhaustion, and plaintiff has failed to exhaust her administrative remedies.[3]  *See Romero-Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 149 (D.D.C. 2005) (holding that placement on administrative leave is a discrete act requiring exhaustion).

Even if plaintiff did exhaust the administrative remedies for her status change claim, I find that the defendant provided a legitimate, non-discriminatory reason for the adverse action—to correct an administrative error—and plaintiff has failed to produce sufficient evidence for a reasonable jury to infer that it was retaliatory.  Ex. 14 to Def.'s Mot.; Def.'s Mot. at 16-18.  Defendant originally hired plaintiff as a nonprobationary employee but changed her status to probationary, in accordance with 5 C.F.R. § 315.802, upon discovering that she had a six-month break from federal employment.  Def.'s Mot. at 16-18; Hernandez Tr. 32:3-9, 37:3-14; Ex. 6 to Pl.'s Opp'n.  Plaintiff alleges that this change was improper because she was "hired . . . as a reinstatement under 5 C.F.R. § 315.401" and "was not required to complete a probationary period."  Pl.'s Opp'n at 3.  However, she produced no evidence to support this allegation.  Plaintiff relies on

---

[3] Plaintiff attempts to convince the Court that the change in status is merely "a detail of" her "wrongful[] terminat[ion]" claim and should be deemed exhausted, particularly because certain documents discussing the status change were included in the Report of Investigation.  Pl.'s Opp'n at 13-14.  This Circuit has stated that "notice [of an EEO claim] may be adequate where a claim is brought to the agency's attention 'during the course of the administrative proceeding' and 'before it issued its final decision' even if the argument or claim is not clearly set out in the complaint."  *Brown v. Marsh* 777 F.2d 8, 13 (D.C. Cir. 1985) (citation omitted).  Although the documents that plaintiff cites were a part of the EEO investigation, they do not provide notice that plaintiff was challenging the status change; they merely detail the fact that the change occurred and the reason for it.  *See* Exs. 4-6 to Pl.'s Opp'n.  Plaintiff first challenged the status change in this Court, and thus, she has failed to exhaust her administrative remedies for this claim.

personnel action notifications, which in no way indicate the statutory basis for plaintiff's initial hiring. Pl.'s Opp'n at 3; Exs. 4-5 to Pl.'s Opp'n. Defendant's reclassification of plaintiff's employment status to correct an administrative error does not evince retaliatory motives. *Betters v. Stickney*, No. 91-1405, 1991 WL 241895, at *6 (D.D.C. Oct. 31, 1991), *aff'd, Betters v. Stickney*, No. 92-5142, 1992 WL 423979 (D.C. Cir. Dec. 8, 1992). As such, plaintiff has failed to produce sufficient evidence for a reasonable jury to find defendant's proffered reason for the change pretextual or unworthy of credence.

### III.  Plaintiff's Termination

Plaintiff has similarly failed to produce evidence rebutting defendant's legitimate, non-discriminatory reason for terminating her employment. Defendant submits that the agency fired plaintiff for poor performance and errors in her work, which could have compromised national security. Def.'s Mot. at 24. The only evidence plaintiff offers to counter this assertion is the fact that she was never informed, prior to her performance review and termination, that her performance was unsatisfactory. Pl.'s Opp'n at 14; Hernandez Decl. ¶¶ 41, 45-47. Plaintiff additionally argues that her poor performance resulted from a lack of training and untimely feedback. Pl.'s Opp'n at 14. The evidence demonstrates, however, that plaintiff committed numerous mistakes, Ex. 6 to Def.'s Mot., which she admits, Hernandez Tr. 128:7-13, are in an area with potentially serious national security implications. Clagett Decl. ¶ 6; Scott Decl. ¶ 5; Hernandez Tr. 79:11-14. Plaintiff has provided insufficient evidence either to discredit defendant's asserted

non-discriminatory reason for her termination—poor performance—or to show that the action was retaliatory. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1200 (D.C. Cir. 2008).

IV.   **Defendant's Refusal to Reinstate Plaintiff to the USPTO**

Finally, plaintiff is unable to establish a causal connection between her EEO activities and defendant's refusal to reinstate her as a USPTO patent examiner. Each individual involved in the hiring process for the patent examiner position stated, in a sworn declaration, that he or she was unaware of plaintiff's EEO complaints during the hiring process.[4] Wiley Decl. ¶ 5; Burgess Decl. ¶¶ 1, 3; Matecki Decl. ¶ 3; Hafiz Decl. ¶¶ 1-2; Cuomo Decl. ¶¶ 1-2. Plaintiff's allegations that an employee at the USPTO may have been aware of her EEO complaints are of no import. Pl.'s Opp'n at 14-15. According to plaintiff, her co-worker, Wan-Kang Will Chan, contacted his friend at the USPTO, Gary Chin, in September 2007, and the two "had a casual conversation." Affidavit of Wan-Kang Will Chan ("Chan Aff."), Ex. 13 to Pl.'s Opp'n, at 2. It is unclear whether Mr. Chan informed Mr. Chin of plaintiff's EEO complaints. Even if Mr. Chin was so informed, plaintiff has failed to show either that Mr. Chin was involved in the USPTO hiring process or that he even informed those who were involved in the

---

[4] To the extent that, as alleged by plaintiff, there is a discrepancy between Mr. Wiley's declaration and the defendant's interrogatory response, it is immaterial. *See* Pl.'s Opp'n at 14-15. Mr. Wiley executed a second declaration in August 2011 clarifying the discrepancy. Def.'s Reply at 9; Ex. 1 to Def.'s Reply ¶ 3. Furthermore, whether Mr. Wiley knew that plaintiff was seeking reinstatement is not a material fact. *Anderson*, 477 U.S. at 248.

14

hiring process of the EEO complaints. More importantly, the conversation occurred in September 2007, four months *after* plaintiff applied to the USPTO. Chan Aff. at 2; Hernandez Decl. ¶ 49. Put simply, plaintiff has not demonstrated any connection between her EEO activity and defendant's decision not to reinstate her at the USPTO. As such, this theory is also to no avail.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's Motion for Summary Judgment and DISMISSES the action in its entirety. An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge